

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X
    UNITED STATES OF AMERICA

                -against-

    CESAR BENITEZ-DOMINGUEZ,

                Defendant.
---------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**19-CR-99 (NGG)**

NICHOLAS G. GARAUFIS, United States District Judge.

    Defendant Cesar Benitez-Dominguez has been charged with one count of illegal reentry in violation of 8 U.S.C. §§ 1326(a) and (b)(1). (*See* Indictment (Dkt. 11).) Section 1326(a) makes it a crime for a person who "has been denied admission, excluded, deported, or removed" from the United States to reenter the country. The indictment asserts that Mr. Benitez-Dominguez had "previously been deported and removed from the United States" (Indictment at 1), a claim predicated on an Order of Removal issued by an immigration court in 2008 (Order of Removal (Dkt. 29-8).

    Pending before the court is Mr. Benitez-Dominguez's motion to dismiss the indictment pursuant to Federal Rule of Criminal Procedure 12. Mr. Benitez-Dominguez argues that the Government cannot establish the elements of a § 1326(a) violation because the immigration court that ordered his removal in 2008 lacked the requisite jurisdiction to do so. Because the court agrees that the immigration court was without jurisdiction to order Mr. Benitez-Dominguez's removal, the motion is GRANTED.

# I. BACKGROUND

## A. Facts

Mr. Benitez-Dominguez was born in Mexico City, Mexico in 1972 and entered the United States without inspection in or around 1989. (Decl. of S. Isaac Wheeler in Supp. of Mot. ("Wheeler Decl.") (Dkt. 29-2) ¶ 4.) He was convicted in New York of driving under the influence and bail jumping in or around 2006; he served eight months in jail and was then transferred directly into the custody of the U.S. Immigrations and Customs Enforcement ("ICE"). (*Id.* ¶¶ 4-5; Audio Recording of Aug. 6, 2008 Removal Hearing ("Hearing Audio") (Wheeler Decl. at Ex. A).) On July 7, 2008, Mr. Benitez-Dominguez was served with a Notice to Appear ("NTA"), charging him with removability under 8 U.S.C. 1182(a)(6)(A)(i) on the basis that he entered the United States without inspection. (*Id.* ¶ 6; NTA (Dkt. 29-4).) The NTA did not include either the address of the immigration court where it would be filed or the date and time of Mr. Benitez-Dominguez's initial hearing. (NTA at 1.)

Mr. Benitez-Dominguez was processed in Manhattan on July 9, 2008, but was transferred to a facility in York, PA on July 10, 2008. (Wheeler Decl. ¶ 8.) At some point thereafter, he was transferred again to a facility in Livingston, TX. (Not. of Change of Address for Immigration Court ("Not. of Change of Address") (Dkt. 29-6).) On July 23, 2008, Mr. Benitez-Dominguez was served with a Notice of Change of Address for Immigration Court, which provided an address in Houston where his hearing would be held. (Not. of Change of Address.) According to defense counsel, the official court file for the removal proceedings does not include any notice of hearing issued to Mr. Benitez-Dominguez that indicated the time and date of his hearing. (Wheeler Decl. ¶ 12.)

On August 6, 2008, Mr. Benitez-Dominguez appeared before Immigration Judge ("IJ") Jimmie Lee Benton at the Houston, TX Immigration Court. (*Id.* ¶ 11.) After a hearing that lasted less than three minutes (*see* Hearing Audio), Judge Benton ordered Mr. Benitez-Dominguez removed (*Id.*; *see also* Order of Removal). Mr. Benitez-Dominguez was removed on August 12, 2008. (Warrant of Removal/Deportation (Dkt. 30 at ECF p. 21).)

At some point thereafter, Mr. Benitez-Dominguez returned to the United States. Magistrate Judge Viktor V. Pohorelsky issued an arrest warrant under seal on October 10, 2010. (Warrant (Dkt. 2).) According to the Government, Mr. Benitez-Dominguez was arrested by the New York Police Department around August 27, 2018 on charges that have since been dismissed. (Government Mem. in Opp. ("Gov't Opp.") (Dkt. 30) at 6.) He was transferred to federal custody on January 30, 2019. (*Id.*)

### B. Procedural History

On February 26, 2019, a one-count indictment was filed against Mr. Benitez-Dominguez, charging him with illegal reentry in violation of 8 U.S.C. §§ 1326(a) and 1326(b)(1). (*See* Indictment.) Mr. Benitez-Dominguez was released on his own recognizance on $75,000 bond. (*See* Jan. 30, 2019 Order (Dkt. 8).) He entered a not guilty plea on March 6, 2019. (Mar. 6, 2019 Min. Entry (Dkt. 13).)

On October 15, 2019, Mr. Benitez-Dominguez moved to dismiss the indictment pursuant to Federal Rule of Criminal Procedure 12, arguing that the Government is unable to prove, as required by § 1326(a), that he had been removed. (Mot. to Dismiss ("Mot.") (Dkt. 29); Mem. in Supp. of Mot. ("Mem.") (Dkt. 29-1). The Government opposed Benitez-Dominguez's motion on November 4, 2019 (Gov't Opp.), and Mr. Benitez-Dominguez replied on November 14, 2019 (Def. Reply ("Reply") (Dkt. 31)).

## II. LEGAL STANDARD

"A charge in an indictment is insufficient and must be dismissed when it does not describe conduct that is a violation of the criminal statute charged." *United States v. Litvak*, No. 3:13-CR-19 (JCH), 2013 WL 5740891, at *2 (D. Conn. Oct. 21, 2013) (citing *Russell v. United States*, 369 U.S. 749, 764–65 (1962)). "Rule 12 authorizes defendants to challenge the lawfulness of a prosecution on purely legal, as opposed to factual, grounds." *United States v. Ahmed*, 94 F. Supp. 3d 394, 404 (E.D.N.Y. 2015). "A defendant charged with illegal reentry in violation of 8 U.S.C. § 1326 has a right to challenge the removal order upon which the charge is predicated." *United States v. Pszeniczny*, 384 F. Supp. 3d 353, 355 (E.D.N.Y. 2019) (citing *United States v. Mendoza-Lopez*, 481 U.S. 828, 837-38 (1987)).

## III. DISCUSSION

The court first must decide whether Mr. Benitez-Dominguez satisfies the 8 U.S.C. 1326(d) criteria, which limit collateral review of removal orders. If these criteria are met, the court may then consider whether the 2008 Order of Removal is void due to lack of jurisdiction.

### A. Collateral Attack on Prior Removal under 8 U.S.C. § 1326(d)

Collateral attacks on prior removal orders are limited by 8 U.S.C. § 1326(d). The statute provides:

> In a criminal proceeding under this section, an alien may not challenge the validity of the deportation order in subsection (a)(1) or subsection (b) unless the alien demonstrates that—
>
>    (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
>    (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
>    (3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d).

4

As a threshold matter, Mr. Benitez-Dominguez argues he does not have to satisfy the § 1326(d) criteria because—due to the immigration court's alleged lack of jurisdiction—his challenge goes to the legal existence of the deportation order rather than its validity. (Mem. at 5.) Mr. Benitez-Dominguez insists that "because of the defective NTA, here there simply *is* no removal order to collaterally attack: it is a nullity, 'not voidable, but simply void.'" (Mem. at 16 (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)) (emphasis in original); *see also* Reply at 9 (citing *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270 (2010); *Ex parte Watkins*, 28 U.S. 193, 197 (1830)).) However, these cases do not support the idea that a void order is a legal nullity such that it ceases to exist absent appeal or collateral attack; in fact, they support the opposite.[1]

At least two other courts in this district have considered this question. The defendant in *United States v. Maldonado*, No. 18-CR-308 (CBA) (E.D.N.Y. Feb. 11, 2019) "fashion[ed] his argument about the Immigration Judge's jurisdiction as outside the scope of §1326(d) review." *Id.* slip op. at 29-30. Judge Amon rejected this argument. She found that § 1326(d) "is the exclusive channel through which a defendant can challenge an underlying removal order" and noted that the statute "could not be clearer" in setting forth the criteria under which a collateral attack is permissible. *Id.* at 30. *See also Pszeniczny*, 384 F. Supp. 3d at 361-62 (adopting *Maldonado*'s analysis).

---

[1] Mr. Benitez-Dominguez cites *Ex parte Watkins* as standing for the idea that "[a]ll proceedings of a court beyond its jurisdiction are void" (Reply at 9 (quoting *Ex parte Watkins*, 28 U.S. at 197)), but that case actually held that even if a court's "judgment was erroneous . . . still it is a judgment, and, until reversed, cannot be disregarded." *Id.* at 206; *see also id.* ("The decree having been pronounced, although in a case in which it was erroneous for want of the averment of jurisdiction, was nevertheless obligatory as a decree."). Similarly, *Espinosa* declares that "[a] void judgment is a legal nullity," *Espinosa*, 559 U.S. at 270, but it makes this statement while considering a motion for relief under Federal Rule of Civil Procedure 60(b)(4), *i.e.*, it does not stand for the principle that a void judgment is self-terminating without a challenge to its validity. Finally, the judgment in *Weyant* that was "not voidable, but simply void" was a conviction that was overturned on appeal, and not a judgment that spontaneously ceased to exist. *Weyant*, 101 F.3d at 854.

This court agrees. In order to challenge the jurisdiction of the immigration court, Mr. Benitez-Dominguez must satisfy the § 1326(d) factors.[2] Each factor is discussed in turn.

1. <u>Exhaustion of Administrative Remedies</u>

The parties agree that Mr. Benitez-Dominguez did not seek administrative review of the removal order. (*See* Mem. at 16-17; Gov't Opp. at 8.) However, the Second Circuit has held that the "failure to exhaust administrative remedies bars collateral review of a deportation proceeding under Section 1326(d)(1) only where an alien's waiver of administrative review was knowing and intelligent." *United States v. Calderon*, 391 F.3d 370, 374-75 (2d Cir. 2004) (citation omitted) (alteration adopted). "Given . . . that many aliens are uncounseled, our removal system relies on IJs to explain the law accurately to *pro se* aliens. Otherwise, such aliens would have no way of knowing what information was relevant to their cases and would be practically foreclosed from making a case against removal." *United States v. Copeland*, 376 F.3d 61, 71 (2d Cir. 2004).

"The finding of knowing and intelligent waiver is inevitably a fact-specific inquiry." *Ali v. Mukasey*, 525 F.3d 171, 174 (2d Cir. 2008). The Second Circuit has found a knowing and intelligent waiver of the right to appeal when "the record of the interaction between the IJ and the alien fairly supports the conclusion that the alien or his counsel understood the nature of the waiver." *Id.* In *United States v. Johnson*, 391 F.3d 67 (2d Cir. 2004), the court found a knowing and intelligent waiver where the "IJ clearly advised Johnson of his 'right to appeal to a higher immigration court'" and the IJ "further advised: 'If you want to waive your appeal, it will be a final order and you will not be able to change your mind later on. Do you understand?'" *Id.* at 75.

---

[2] At oral argument, counsel for Mr. Benitez-Dominguez also argued that if the application of the § 1326(d) factors is more restrictive than *United States v. Mendoza-Lopez*, 481 U.S. 828 (1987), §1326(d) is necessarily unconstitutional. (*See* Jan. 30, 2020 Oral Argument Tr. ("Oral Argument Tr.") 18:19-19:6.) Because the court finds that Mr. Benitez-Dominguez satisfies the § 1326(d) factors, it does not engage in a broader analysis of § 1326(d)'s constitutionality.

Similarly, the defendant in *Ahmed v. Holder*, 380 F. App'x 67 (2d Cir. 2010) "not only accepted the IJ's decision as final, but also expressly confirmed his understanding that doing so meant that he could not later appeal the decision and that immigration officers would attempt to send him to Sudan as soon as possible." *Id.* at 70.

Here, the record does not establish a knowing and intelligent waiver of the right to appeal. Mr. Benitez-Dominguez was appearing *pro se* before the immigration court, which supports his argument that the waiver was not knowing and intelligent. *See Calderon*, 391 F.3d at 375. During Mr. Benitez-Dominguez's hearing, the IJ only asked "Do you wish to appeal my decision to a higher court?" and made no further inquiry. (Hearing Audio.) The IJ did not, as in *Johnson* or *Ahmed*, make clear to Mr. Benitez-Dominguez that by waiving his right to appeal he would be consenting to final judgment and would be unable to change his mind at a later date. Nor did the IJ in any way indicate to Mr. Benitez-Dominguez that he had a potentially meritorious ground for appeal. *See Copeland*, 376 F.3d at 71 ("[O]ur removal system relies on IJs to explain the law accurately to *pro se* aliens."); *see also United States v. Perez-Toledo*, 259 F. App'x 915, 916 (9th Cir. 2007) (noting that "where the record before the IJ contains an inference that the petitioner is eligible for relief from deportation, the IJ must advise the alien of this possibility," and that failure to do so makes a waiver of appeal not knowing and intelligent (quotation marks omitted)).

Because Mr. Benitez-Dominguez's waiver of his right to appeal the IJ's decision was not knowing and intelligent, his failure to exhaust his administrative remedies does not bar him from collaterally attacking his removal order.

### 2. Whether the Deportation Proceedings Deprived Mr. Benitez-Dominguez of an Opportunity for Judicial Review

The second § 1326(d) factor is whether the removal proceedings "improperly deprived the alien of the opportunity for judicial review." 8 U.S.C. 1326(d)(2). There is some overlap between this and the prior § 1326(d) factor, as the Second Circuit has noted that "[w]here a waiver of the right to appeal is not knowing, an alien is deprived of the opportunity for judicial review." *Copeland*, 376 F.3d at 68 n.6. However, in addition to review via a direct appeal, "the 'availability of habeas review is sometimes deemed to constitute an opportunity for judicial review.'" *United States v. Thorpe*, No. 15-CR-211 (NGG), 2016 WL 676395, at *4 (E.D.N.Y. Feb. 18, 2016) (quoting *Copeland*, 376 F.3d at 68). However, "its technical availability is not sufficient to satisfy 8 U.S.C. § 1326(d)." *Id.* "[W]here no *realistic opportunity* for judicial review by way of habeas review existed, an alien's failure to seek such review will not be deemed to preclude a collateral attack on a deportation order under [§] 1326(d)(2)." *Calderon*, 391 F.3d at 375 (emphasis in original).

The Second Circuit cautioned that "the interval of time in which it is realistically possible for an alien seek judicial review may be quite short," *United States v. Lopez*, 445 F.3d 90, 99 (2d Cir. 2006), but has also found a period of "less than one month" to be insufficient, *see United States v. Sosa*, 387 F.3d 131, 138 (2d Cir. 2004). Mr. Benitez-Dominguez had only six days. (*See* Warrant of Removal/Deportation.) Because Mr. Benitez-Dominguez did not knowingly and intelligently waive his right to appeal the IJ's decision and could not have realistically sought habeas review of his removal order in six days, he satisfies the second § 1326(d) factor.

### 3. Fundamentally Unfairness of the Removal Order

The final § 1326(d) factor requires a two-step demonstration. For a defendant to show fundamental unfairness, "he must show both a fundamental procedural error and prejudice

8

resulting from that error." *United States v. Fernandez-Antonia*, 278 F.3d 150, 159 (2d Cir. 2002); *see also id.* at 157 (explaining that prejudice results when the unfairness "would have entitled [the defendant] to relief on direct appeal"). "Prejudice is shown where there is a reasonable probability that, but for the error, the result of the proceeding would have been different." *United States v. Daley*, 702 F.3d 96, 100 (2d Cir. 2012) (alterations adopted) (quotation marks and citations omitted).

The Government argues that Mr. Benitez-Dominguez cannot show any prejudice based on the "alleged procedural error" in this case, which it asserts to be the defects in the NTA. (*See* Gov't Opp. at 17 ("The [D]efendant does not make any attempt to show that he would not have been properly ordered removed . . . if location, time and date information had been included in his original NTA.") Mr. Benitez-Dominguez, however, identifies a different procedural error: "the immigration court's improvident attempt to exercise jurisdiction and order removal while lacking jurisdiction to do so." (Reply at 12.) "Had that not occurred," Mr. Benitez-Dominguez argues, he "would not have been removed." (*Id.*); *see also Fernandez-Antonia*, 278 F.3d at 159.

The two procedural errors identified by the parties each merit analysis under *Fernandez-Antonia*. Considering the first error, the Government is correct that if the NTA contained the necessary information to confer jurisdiction to the immigration court, the IJ still would have ordered Mr. Benitez-Dominguez's removal. However, applying the analysis to the second error, Mr. Benitez-Dominguez is correct that had the IJ properly recognized that it lacked jurisdiction over his removal proceedings, it would have dismissed the NTA and Mr. Benitez-Dominguez would not have been removed.[3]

---

[3] At least not until he was served an NTA that complied with the regulation. *See infra* section III.B.

The Government places great weight on the argument that Mr. Benitez-Dominguez "was not deported in error because he, by his own admission, was deportable." (Oral Argument Tr. at 30:19-20.) This argument misses the mark. In contrast to the Government's "no harm no foul" argument, the controlling question here is actually "whether there is a reasonable probability that Defendant would have succeeded on appeal of his deportation order." *United States v. Meza*, 372 F. Supp. 3d 48, 58 (E.D.N.Y. 2019). The Government cannot seriously contend that Mr. Benitez-Dominguez would have been unsuccessful if he were to appeal a deportation order issued by a court that lacked jurisdiction over the removal proceeding. As a result, Mr. Benitez-Dominguez is able to show both a fundamental procedural error and prejudice based on that error, and he therefore satisfies the third and final prong of § 1326(d) and may collaterally attack his removal proceeding.

### B. The Immigration Court's Jurisdiction over Mr. Benitez-Dominguez's Removal Proceeding

Under 8 C.F.R. §1003.14(a), "[j]urisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court." Section 1003.13 includes an NTA as a "charging document" under the regulation. *Id.* § 1003.13. Recently, the Second Circuit found that an NTA that comports with the regulation is "adequate to vest jurisdiction in the Immigration Court." *See Banegas Gomez v. Barr*, 922 F.3d 101, 112 (2d Cir. 2019), *cert. denied sub nom. Gomez v. Barr*, 2020 WL 411675 (U.S. Jan. 27, 2020). Implicit in this holding is that a noncompliant NTA is insufficient to vest jurisdiction in the immigration court. *See id.*

Mr. Benitez-Dominguez indentifies two defects in his NTA and argues that each independently rendered the NTA noncompliant and thus deprived the immigration court of the necessary jurisdiction to order his removal. (Mem. at 5-16.) First, he argues that the NTA did not

10

contain the time and date of his initial hearing and that he was not subsequently provided with notice of that information. Second, he asserts that the NTA did not contain the address of the immigration court where it would be filed. Each point is discussed in turn.

1. Notice of Time and Date

Section 1003.18(b) mandates "the Service shall provide in the [NTA] the time, place, and date of the initial removal hearing, where practicable." The regulation also provides that "[i]f that information is not contained in the [NTA], the Immigration Court shall . . . provid[e] notice to . . . the alien of the time, place and date of hearing." *Id.* In *Banegas Gomez*, the Second Circuit held that "a [NTA] that does not specify the time and place of an alien's initial removal hearing vests an Immigration Judge with jurisdiction over the removal proceedings *so long as a notice of hearing specifying this information is later sent to the alien.*" *Banegas Gomez*, 922 F.3d at 112 (quoting *In re Bermudez-Cota*, 27 I. & N. Dec. 441 (B.I.A. 2018) (alteration adopted) (emphasis in original)).

Here, it is undisputed that the NTA provided to Mr. Benitez-Dominguez did not contain written notice of the time and place of his hearing. (*See* NTA.) Additionally, the record indicates that this information was not provided via a subsequent notice sent to Mr. Benitez-Dominguez. (*See* Wheeler Decl. ¶ 12.) Under *Banegas Gomez*, these two facts are sufficient to decide that the immigration court lacked the jurisdiction to order Mr. Benitez-Dominguez's removal and that the indictment should therefore be dismissed. *Banegas Gomez*, 922 F.3d at 112.

The Government, however, advances two arguments to the contrary. It first argues that Mr. Benitez-Dominguez "clearly received notice of the date and time of the hearing[] because he physically appeared at the hearing." (Opp. at 16.) Next, it argues that the notice requirement was met because the "certificate of service" box at the end of the NTA, signed by an agent whose

11

name is redacted in the record, included a form statement that "the alien was provided oral notice . . . of the time and place of his or her hearing." (NTA at 2; Opp. at 18.) Both of these arguments are flawed.

First, the Government's Kafkaesque assertion that being dragged into court by immigration officers suffices as notice of the date and time of the hearing runs squarely into *Banegas Gomez* (in addition to the basic precepts of due process). In that case, the alien "appeared" at "his initial hearing," but the Second Circuit still found that "a notice of hearing specifying" the time and date of the initial removal hearing must be "sent to the alien" in order for jurisdiction to vest in the immigration court. *Banegas Gomez*, 922 F.3d at 112. The requirement that "a notice of hearing" be "later sent to the alien" would be wholly unnecessary if being brought to court on the day of the hearing was sufficient notice for jurisdiction to vest.

Second, neither the statute nor the regulation countenances the otherwise undocumented oral notice on which the Government relies. Section 1003.18(b) provides that "the Service shall provide *in* the [NTA], the time, place and date" of the hearing. (emphasis added) It continues, "[i]f that information is not *contained in* the [NTA]," a subsequent notice of hearing must be provided to the alien. *Id.* (emphasis added). Even assuming that the anonymous serving agent provided oral notice of the time, place and date of his initial hearing,[4] such oral notice does alter the fact that the "information is not contained" in the NTA. Therefore, a subsequent notice of hearing was required, and, because that subsequent notice was never provided, the immigration court did not have the jurisdiction to order Mr. Benitez-Dominguez's removal. *See Banegas Gomez*, 922 F.3d at 112.

---

[4] This assumption, in turn, requires assuming the serving agent had advance knowledge that Mr. Benitez-Dominguez would be transferred from New York, NY to York, PA to Livingston, TX and would appear before an IJ in Houston, TX a month after the agent served Mr. Benitez-Dominguez with the NTA.

12

2. <u>The Address of the Immigration Court</u>

Mr. Benitez-Dominguez also advances a second, independently sufficient argument for why the IJ was without jurisdiction over his 2008 removal proceeding: the NTA did not include the address of the immigration court where it was to be filed.

Pursuant to § 1003.15, an NTA must include, *inter alia*, "the address of the Immigration Court where the Service will file the ... [NTA]." *Id.* § 1003.15(b)(6). Mr. Benitez-Dominguez argues that because his NTA did not include the address of the immigration court where it was to be filed, it was insufficient to confer jurisdiction over his removal proceeding. While *Banegas Gomez* did not directly address the requirements of § 1003.15(b), the panel's logic supports Mr. Benitez-Dominguez's argument.

First, *Banegas Gomez* held that the regulations at issue are jurisdictional. *Banegas Gomez*, 922 F.3d at 111 ("The Attorney General has promulgated regulations governing removal proceedings that *do* address when jurisdiction vests in the Immigration Court." (emphasis in original)). Second, as discussed above, the panel held that an NTA is "adequate to vest jurisdiction in the Immigration Court, at least so long as" it complied with the regulation. *Id.* at 112. That the panel included the qualifying phrase "at least so long as" to conclude that jurisdiction vests in the immigration court when the NTA complies with the requirements of § 1003.18(b) indicates that only a compliant NTA will confer jurisdiction. It strains credulity, then, to argue that compliance with § 1003.18(b) is necessary to vest jurisdiction, but compliance with § 1003.15(b) is not.[5]

---

[5] This proposition is further supported by the other provisions in § 1003.15. Section 1003.15(a), which lists information to be provided by the Service to the Executive Office for Immigration Review, includes a disclaimer that omission of the items listed "shall not provide the alien with any substantive or procedural rights." Similarly, § 1003.15(c), which lists information the Service "shall provide" to the immigration court, declares that the "[f]ailure to provide any of these items shall not be construed as affording the alien any substantive or procedural rights." However, § 1003.15(b) does not include a similar disclaimer. That these regulations include a disclaimer of procedural and substantive rights for §§ 1003.15(a) and 1003.15(c), but not for § 1003.15(b) suggests that

13

The Government argues that even if the original NTA did not vest jurisdiction in the immigration court, that defect was cured when Mr. Benitez-Dominguez was served with a Notice of Change of Address for Immigration Court on July 23, 2008. (Not. of Change of Address.) This notice, referencing the defective NTA served on Mr. Benitez-Dominguez, stated that it was provided "pursuant to Section 239(a)(2)(A) of the Immigration and Nationality Act." (*Id.*) Codified at 8 U.S.C. § 1229(a)(2)(A), this provision requires notice to be given to the alien or the alien's counsel "in removal proceedings under section 1229a of this title, in the case of any change or postponement in the time and place of such proceedings." The Supreme Court has analyzed this provision:

> By allowing for a "change or postponement" of the proceedings to a "new time or place," [§ 1229(a)(2)] presumes that the Government has already served a "notice to appear under section 1229(a)" that specified a time and place as required by § 1229(a)(1)(G)(i). Otherwise, there would be no time or place to "change or postpone."

*Pereira v. Sessions*, 138 S. Ct. 2105, 2114 (2018) (alteration adopted). Here, the Government attempts to cure a defective NTA with a letter that presumes the existence of valid NTA. The Government's argument therefore fails, and the fact that Mr. Benitez-Dominguez's NTA lacked the address of the immigration court where it was to be filed is an independently sufficient error that deprived the immigration court of jurisdiction to order Mr. Benitez-Dominguez's removal.

---

§ 1003.15(b) does provide the alien with substantive and procedural rights. *See United States v. Ramos-Urias*, No. 18-CR-00076, 2019 WL 1567526, at *2 (N.D. Cal. Apr. 8, 2019); *see also N.L.R.B. v. SW Gen., Inc.*, 137 S. Ct. 929, 940 (2017) ("If a sign at the entrance to a zoo says 'come see the elephant, lion, hippo, and giraffe,' and a temporary sign is added saying 'the giraffe is sick,' you would reasonably assume that the others are in good health.").

## IV. CONCLUSION

Because the immigration court lacked jurisdiction to order Mr. Benitez-Dominguez's removal in 2008, the removal order is invalid. The Government may not rely on an invalid removal order to satisfy the elements 8 U.S.C. § 1326(a). Therefore, the Defendant's motion is GRANTED and the Indictment (Dkt. 11) is hereby DISMISSED.

SO ORDERED.

Dated: Brooklyn, New York
February 24, 2020

*Nicholas G. Garaufis*
NICHOLAS G. GARAUFIS
United States District Judge